UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| RODNEY HARRELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-CV-02320 |
| ) | |
| JACOBS FIELD SERVICES NORTH ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

_____

**OPINION**
_____

This case is before the Court for ruling on the Motion for Partial Summary Judgment (#29) filed by the Plaintiff, Rodney Harrell, and a cross motion for Summary Judgment (#35) filed by the Defendant, Jacobs Field Services North America, Inc. (Jacobs). This Court has carefully reviewed the parties' arguments and exhibits. Following this careful and thorough review, the Plaintiff's Motion for Partial Summary Judgment (#29) is DENIED and the Defendant's cross motion for Summary Judgment (#35) is DENIED.

FACTS[1]

Similar to the start of a maze, the beginning of this story is straightforward and uncontested. The Defendant is the Field Service Division of a large corporate entity known as Jacobs Engineering. The Field Service Division is further broken down into Regions. Relevant to this case is Jacobs' Midwest Field Service Region site in Decatur, Illinois, which consisted of

___

[1] This statement of facts is based upon the parties' Statements of Undisputed Facts and the exhibits submitted by the parties.

-1-

five facilities, the BioProducts Plant, the Glycol Plant, the Corn Sweetners Plant, the Archer-Daniels Midland East Plant, and the fabrication shop. Each of the five facilities were run by superintendents who were supervised by the assistant site manager, Charles Anderson (Anderson), and the site manager, Jerry Gillespey (Gillespey). Additionally, if any of the superintendents had a human resource question they directed it to the office manager, Robert Beck (Beck) who passed it on to Wanda Haydel (Haydel) at Defendant's corporate benefits department located in Baton Rouge, Louisiana.

The Plaintiff began working as a laborer at the fabrication shop on August 13, 2007. At the time, the superintendent of the fabrication shop was Robert Blythe (Blythe). The Plaintiff worked at the fabrication shop without incident until August 11, 2008, when the Plaintiff's allergies began acting up. The Plaintiff called in sick from August 11 to August 14. The Plaintiff also failed to show up for work or call and report his absence the following week.[2] However, sometime before August 20, the Plaintiff called Blythe to let him know that he scheduled a doctors appointment for August 21 and that he was requesting Family Medical Leave pursuant to the Family Medical Leave Act (FMLA) and needed the proper paperwork. Blythe relayed the Plaintiff's request to Beck who emailed Haydel at Defendants' corporate benefits department requesting that she mail FMLA paperwork to the Plaintiff's home.

On August 19, 2008, Plaintiff received the paperwork, which consisted of two forms. The first form, titled "Request for Family or Medical Leave," indicated that Defendant was on notice

---

[2] In 2008, Defendant's policy for unapproved absences was as follows: if an employee called in and reported absent, but the absence was not approved, then the employee would receive a verbal warning followed by a written warning, suspension, and ultimately termination; if an employee failed to call in and report their absence for three consecutive days that was construed as job abandonment and the employee was terminated. Prior to August 11, 2008, the Plaintiff had received a verbal warning.

that the Plaintiff may need to take FMLA leave for a serious health condition and that the requested leave was to start August 18, 2008. The form further stated that the Plaintiff was required to furnish medical certification of a serious health condition, that the Plaintiff was required to present a fitness-for-duty certificate prior to being restored to employment, and that the Plaintiff was required to furnish Defendant with periodic reports updating the company on the Plaintiff's status and intent to return to work. The second form contained the medical certification of a serious health condition required by the first form. On August 21, 2008, the Plaintiff had his doctor fill out the second form, which stated that the Plaintiff suffered from allergic rhinitis, was incapacitated from August 11, 2008 to August 21, 2008, and was able to return to work on August 25, 2008 without any restrictions.

On August 25, 2008, the Plaintiff returned both forms and the fitness for duty certificate to Beck who mailed them to Haydel. Blythe also granted the Plaintiff paid vacation from August 25th to the 28th. Haydel signed the forms and fitness for duty certificate on August 26th subsequently approving the Plaintiff's FMLA leave.

Harking back to the maze analogy, what occurred between September 2 and October 6 is analogous to entering the middle section of a maze because the truth is lost somewhere in the twists and turns of the Plaintiff's and Defendant's conflicting versions of the facts. Both sides agree that the Plaintiff was supposed to return to work when his vacation ended on September 2, 2008. However, each side offers different reasons for why the Plaintiff failed to return to work. The Plaintiff testified that Haydel specifically told him during an August 22 telephone conversation that he was not allowed to return to work until notified that his FMLA leave was

approved.[3]  Therefore, the reason the Plaintiff offers for why he never returned to work was that the Defendant failed to notify him that his FMLA leave was approved and that he was cleared to return to work.  Further, the Plaintiff testified that he stopped in the fabrication shop during the week of August 25, 2008, to ask Blythe whether he was cleared to return to work and Blythe told him he was still waiting to hear from Haydel.  The Plaintiff also testified that he stopped in the fabrication shop twice during the week of September 1st to inquire whether he was cleared to return to work.  Again, Blythe told him that he hadn't heard anything from Haydel and the Plaintiff responded that he was going to file for unemployment since Defendant was not allowing him to return to work.  The Plaintiff filed for unemployment in September of 2008 and started receiving unemployment benefits due to the fact that he was not allowed to return to work following FMLA leave.

The Defendant denies that Haydel or anyone at Defendant told the Plaintiff that he was not allowed to return to work until they notified him that his FMLA paperwork was approved. The Defendant maintains that the Plaintiff's FMLA leave was approved when Haydel signed the FMLA forms on August 26, 2008.  Therefore, the Plaintiff was supposed to return to work when

---

[3] The Defendant argues that the Plaintiff's recitation of Haydel's statements during their August 22nd phone conversation is inadmissible hearsay.  However, Haydel's statements fall squarely within Federal Rule of Evidence 801(d)(2)(D).  Rule 801(d)(2)(D) outlines two requirements for a statement to be admissible as nonhearsay: first, the statement must be offered against a party and second, the statement must be made by "the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship..."  Haydel's statement satisfies both these requirements.  First, Haydel's statement is an admission because it was made by a party opponent.  Second, as an employee, Haydel was an agent of the Defendant.  Further, as the Benefits Supervisor of Jacobs Field Services North America Haydel was the only one at Defendant who could approve the Plaintiff's request for FMLA leave.  Therefore, Hadyel's statement that the Plaintiff could not return to work until notified that his FMLA leave is approved was a statement about a matter within her scope of employment.

his vacation ended on September 2, 2008.  Further, the Defendant alleges that the Plaintiff never checked with Blythe or anyone else employed by Defendant during the week of August 25 or September 1 concerning the Plaintiff's FMLA status.  Specifically, in his deposition, Blythe denies having any contact with the Plaintiff until October 6, 2008.  In addition, Blythe and Beck testified that they had a handful of meetings with Anderson and Gillespey concerning the Plaintiff's absences.  Blythe and Beck also testified that they did not receive the mandatory periodic reports updating Jacobs on the Plaintiff's intent to return to work.  The Defendant does not deny that the Plaintiff received unemployment benefits from Defendant.  However, unemployment was handled by the corporate human resource office in Houston and La Porte, Texas.  Therefore, the fabrication shop and the benefit department were unaware that the Plaintiff was receiving unemployment benefits.

Furthering the maze analogy, in October of 2008 the story emerges from the muddled middle and once again becomes clear and straightforward.  On October 6, 2008, the Plaintiff called Blythe to request his coveralls and Blythe asked the Plaintiff if that meant he was quitting.  The Plaintiff stated that he was not quitting and Blythe told Anderson and Gillespey that the Plaintiff had not quit his job.  On November 13, 2008, the Plaintiff received a letter from Haydel advising the Plaintiff that his twelve weeks of FMLA leave ended on November 7, 2008.  On December 1, 2008, the Plaintiff responded to Haydel's letter stating that his doctor released him to return to work on August 25, 2008.  That same day the Plaintiff returned to the fabrication shop to pick up his belongings.  On February 13, 2009, the Defendant removed the Plaintiff from its payroll terminating his employment.

On December 28, 2009, Plaintiff filed a Compliant (#1) against Defendant.  Plaintiff alleged that Defendant violated the FMLA for not allowing him to return to work following

-5-

FMLA leave. Both the Plaintiff and Defendant filed Motions for Summary Judgment. Both Motions are fully briefed and ready for ruling.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56 a district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact requiring a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Perkin Cmty. High Sch. Dist. 303, 158 F.3d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must how what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. Of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp.,

472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23. "Conclusory allegations not supported by the record are not enough to withstand summary judgment." Basith v. Cook County, 241 F.3d 919, 928 (7th Cir. 2001).

## II. FMLA CLAIM

The FMLA entitles eligible employers up to twelve unpaid work weeks in any twelve month period for, among other things, a serious health condition as defined by the Act. 29 U.S.C. § 2612 (a)(1); Vail v. Raybestos Prods. Co., 533 F.3d 904, 909 (7th Cir. 2008), cert. denied, 2009 WL 425413 (U.S. 2009). After the period of leave expires, the employee is entitled to be reinstated to his former position or an equivalent one with the same benefits and terms of employment that existed prior to his leave. 29 U.S.C. § 2614(a). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, an employee must establish that: (1) he was eligible for FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006). The Plaintiff's and Defendant's cross motions for summary judgment only focus on prongs one, three, and five. Therefore, this Court only discusses prongs one, three, and five in turn.

### A.

There is no genuine dispute of material fact regarding whether the Plaintiff was eligible for FMLA's protections. The FMLA defines an eligible employee as an employee who has been employed "for at least 12 months by the employer with respect to whom leave is requested..." 29 U.S.C. § 2611 (2)(A). In addition, "an employee may be on 'non-FMLA leave' at the time he or

she meets the eligibility requirements, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirements would be 'FMLA leave.'" 29 C.F.R. § 825.110(d). The Defendant argues that the Plaintiff was not eligible for FMLA protections because the Plaintiff's medical certification lists the Plaintiff's leave from August 11, 2008 to August 21, 2008, and the Plaintiff began working for the Defendant on August 13, 2007. Therefore, according to the Defendant, the Plaintiff only worked for 364 days, a few days shy of the twelve month mark required by the FMLA. However, the Plaintiff's medical certification simply states that the Plaintiff's condition commenced on August 11, 2008. Further, the Defendant earmarked the Plaintiff's FMLA leave as starting August 18, 2008, in its Request for Family Medical Leave form. Even if the Plaintiff's leave started August 11 as opposed to August 18, pursuant to 29 C.F.R. § 825.110(d) the Plaintiff would still be eligible for FMLA protections starting August 13, 2008. Thus, the Plaintiff was eligible for FMLA's protections because the Plaintiff was employed for twelve months prior to starting FMLA leave.

B.

There also is no genuine dispute of material fact regarding whether the Plaintiff was entitled to leave under the FMLA. An employee is entitled to FMLA leave if he suffers from a serious health condition that renders him unable to perform the functions of his position. 29 U.S.C. § 2612(1)(D); Burnett, 472 F.3d at 478. The Defendant argues only that allergic rhinitis is not a serious health condition, thus the court's analysis will focus only on that aspect, since Defendant does not address whether Plaintiff's condition left him unable to perform work. Therefore, this Court's analysis focuses solely on whether allergic rhinitis qualifies as a serious medical condition as defined by the FMLA.

The FMLA defines a serious health condition as "an illness, injury, impairment, or

physical or mental condition that involves - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Continuing treatment by a health care provider includes treatment for chronic conditions. 29 C.F.R. § 825.113(a). The Plaintiff's doctor marked on the Plaintiff's medical certification that he suffered from chronic conditions requiring treatment. According to the Code of Federal Regulations (CFR), a chronic health condition is defined as one which "(1) [r]equires periodic visits for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) [c]ontinues over an extended period of time; and (3) [m]ay cause episodic rather than a continuing period of incapacity." 29 C.F.R. § 825.115(c). The Plaintiff testified that until recently a doctor prescribed him allergy medication, which indicates that the Plaintiff periodically visited a doctor. In addition, the Plaintiff testified that he has suffered from allergies since the age of eighteen and that his allergies become worse in the fall, spring, and summer, resulting in periodic incapacity. Therefore, the facts clearly demonstrate that the Plaintiff suffers from a chronic condition.

The FMLA also requires that the Plaintiff received treatment for a chronic condition. The Code of Federal Regulations, Title 29 § 825.113(c), defines treatment for a chronic condition as "a course of prescription medicine or therapy requiring special equipment to resolve or alleviate the health condition." The CFR further clarifies that over-the-counter medicines that can be initiated without a visit to the health care provider, by itself, is not sufficient to constitute treatment for a chronic condition. 29 C.F.R. § 825.113(c). The Defendant argues that the Plaintiff did not receive treatment for a chronic condition because the Plaintiff testified that he does not currently take allergy shots and that he takes over the counter medication for his seasonal allergies. However, the medical records stemming from the Plaintiff's August 21, 2008,

visit clearly state that the Plaintiff received an injection and was given a prescription for Claritin D.  Although Claritin D is available over the counter, the administration of the injection in combination with the prescription of Claritin D is enough to satisfy the CFR's definition of treatment for a chronic condition.  Therefore, it is clear that starting August 18, 2008, the Plaintiff suffered from a serious health condition requiring continuing treatment by a health care provider.

Even if the Plaintiff did not receive treatment for a chronic condition during his August 21, 2008, doctor's visit, the Defendant is estopped from arguing that the Plaintiff's condition was not serious enough to entitle him to FMLA leave.  In <u>Dormeyer v. Comerica Bank-Illinois</u>, 223 F.3d 579 (7th Cir. 2000), the Seventh Circuit stated that the principle of equitable estoppel is applicable to the defense of ineligibility in an FMLA case if an employer's silence misled an employee into believing he was entitled to family leave, the employee reasonably relied on that promise, and was harmed as a result.  <u>Dormeyer</u>, 223 F.3d at 582.

In the instant case, the Plaintiff has presented the factual foundation for the application of equitable estoppel.  In particular, the Defendant received the Plaintiff's medical certification that stated that the Plaintiff received prescription medicine for a serious health condition.  According to the FMLA, if the Defendant doubted the validity of the Plaintiff's medical certification, the Defendant had the right to require the Plaintiff to see a second health care provider approved by the employer.  29 U.S.C. § 2613(c).  And if the second health care provider's opinion differed from the opinion in the Plaintiff's original medical certification, the Defendant had the right to require the Plaintiff to see a third health care provider, agreed upon jointly by the employer and employee, to resolve the ambiguity.  29 U.S.C. § 2613(d).  Therefore, even if the Plaintiff did not receive treatment for a chronic condition, the Defendant cannot now argue that the Plaintiff was

-10-

not entitled to FMLA leave because the Plaintiff reasonably relied on the Defendant's acceptance of his medical certification in exercising his right to FMLA leave.

C.

In its motion for summary judgment the Defendant argued that it did not deny the Plaintiff FMLA benefits that he was entitled to because the Plaintiff violated his duty to turn in periodic reports as required by the "Request for Family or Medical Leave" form. In addition, the Defendant argues that the Defendant did not deny the Plaintiff FMLA benefits to which he was entitled because the Plaintiff voluntarily quit by failing to return from vacation. In his motion for summary judgment, the Plaintiff alleges that the Defendant denied him FMLA benefits to which he was entitled by refusing to allow him to return to work. The Court finds that there is no genuine dispute of material fact regarding whether the Plaintiff violated his duty to turn in periodic intent to return reports. However, the Court finds that there is a genuine dispute of material fact regarding whether the Defendant refused to allow him to return to work or whether the Plaintiff voluntarily quit.

There is no genuine dispute of material fact regarding whether the Plaintiff violated his duty to turn in periodic reports. In order to provide the employer with advance notice of an employee's return, the CFR, Title 29 § 825.311, permits an employer to "require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." The "Request for Family or Medical Leave" form stated that the Plaintiff was required to furnish the Defendant with periodic reports every two weeks concerning the Plaintiff's status and intent to return to work. In his deposition, the Plaintiff admits he was aware that he had to furnish the Defendant with periodic reports and admits that he never turned in any reports. Ex. 1 pg 56-57. However, the Plaintiff only has a duty to turn in periodic reports if he is unsure of when he will be

able to return to work. In the instant case, the Defendant knew that the Plaintiff was released to return to work on August 25 and was notified that the Plaintiff was going to return to work on September 2, when his vacation ended. Therefore, the Plaintiff was under no obligation to furnish the Defendant with periodic reports on his intent to return to work because the Defendant already knew the date the Plaintiff's FMLA ended and the date the Plaintiff intended to return to work.

There is a genuine dispute of material fact regarding whether the Defendant denied the Plaintiff FMLA benefits he was entitled to. According to the FMLA, any eligible employee who takes FMLA leave is entitled, on return from such leave, to be restored to the position of employment held before the leave commenced or to be restored to an equivalent position. 29 U.S.C. § 2614(a). The FMLA does not impose upon the employer an affirmative duty to inform the employee of when his leave ends. Garcia v. Crown Services, Inc., 2006 WL 2381786, at *7 (E.D. Wis. 2006). In fact the opposite is true and even in cases of unforeseeable leave, employers are entitled to know when a given employee will return to work. Righi v. SMC Corporation of America, 632 F.3d 404, 410 (7th Cir. 2011) (citations omitted). Therefore, for an interference claim to be actionable pursuant to 29 U.S.C. § 2614(a), the employer has to do something more than passively allow the employee to miss his return date. The employer has to actively misrepresent the employee's return date or cause the employee to miss the return date. Garcia, 2006 WL 2381786, at *7. There is no factual dispute over when the Plaintiff was supposed to return to work. The facts clearly demonstrate that the Plaintiff was supposed to return to work when his vacation ended on September 2, 2008. However, there is a factual dispute over whether the Defendant misrepresented or caused the employee to miss his return date thereby interfering with the Plaintiff's FMLA right to return to work.

According to the Plaintiff, during their August 22 telephone conversation Haydel told him

that he was not allowed to return until notified that his FMLA leave was approved. Further, the Plaintiff testified that he stopped in the fabrication shop during the week of August 25 and twice during the week of September 1st to inquire whether he was allowed to return to work. Both times Blythe told him that he had not heard from Haydel. At that point, the Plaintiff filed for unemployment in September of 2008 and started receiving benefits due to the fact that he was not allowed to return to work following FMLA leave.[4]

Conversely, the Defendant denies that Haydel or anyone at Jacobs told the Plaintiff that he was not allowed to return to work until someone notified him that his FMLA leave was approved. The Defendant maintains that the Plaintiff knew that his leave was going to be approved when he mailed the completed forms to Haydel. Further, the Defendant states that the Plaintiff never checked with Blythe or anyone else during the week of August 25 or September 1 concerning the Plaintiff's FMLA status.

The Plaintiff and Defendant's contradictory stories concerning what occurred during the last week of August and first few weeks of September can only be resolved by the trier of fact. Further, the resolution of the factual dispute is material to determining whether the Defendant denied the Plaintiff FMLA benefits that he was entitled to. Construing the facts in favor of the Plaintiff, it is clear that he has satisfied his burden to provide sufficient evidence that the Defendant interfered with his FMLA right to return to work. For instance, if accepted as true, the Plaintiff's assertion that Haydel told him that he could not return until his FMLA leave was

---

[4] The Illinois Department of Employment Security determination granting the Plaintiff unemployment benefits because he was not allowed to return to work from FMLA is not dispositive that the Defendant refused to allow the Plaintiff to return from FMLA leave. According to the Unemployment Insurance Act no determination "shall be admissible or used in evidence in any action other than one arising out of this Act, nor shall it be binding or conclusive except as provided in this Act..." 820 Ill. Comp. Stat. 405/1900(B) (2009).

approved and Blythe's refusal to allow the Plaintiff to return to work when he returned to the fabrication shop is adequate to show that the Defendant actively caused the Plaintiff to miss his return date. Therefore, the case must proceed to trial on the issue of whether the Defendant interfered with the Plaintiff's FMLA right to return to work following leave.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Partial Summary Judgment (#29) filed by the Plaintiff, Rodney Harrell is DENIED.

(2) The cross Motion for Summary Judgment (#35) filed by the Defendant, Jacobs Field Services North America, Inc., is DENIED.

(3) This case remains scheduled for a final pretrial conference on Friday, August 19, 2011, at 2:30 pm.

ENTERED this 25th day of July, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE